IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CITY OF KANSAS CITY, MISSOURI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 05-0368-CV-W-GAF |
| ) | |
| HOUSING & ECONOMIC DEVELOPMENT ) | |
| FINANCIAL CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION

Pending before the Court is the claim of Charlene McCorkle filed on October 19, 2005 (Doc. No. 158). On April 6, 2007, the undersigned held a hearing on the claim. Claimant Charlene McCorkle was present and represented herself . The City of Kansas City, Missouri, was represented by Galen Beaufort, City Attorney. The Housing and Economic Development Financial Corporation (HEDFC) appeared through its Receiver, David E. Bahner, and was represented by counsel Robert Fitzgerald and Joanne Spears Jackson. At the hearing, Charlene McCorkle, Ronald George and David Bahner were called as witnesses. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| 1 | Attachment to Proof of Claim |
| 2 | Resume of David Bahner |
| 3 | Document Routing Sheet |
| 4 | Contractor's Warranty Holdback Release |
| 5 | Progress and Final Payment Request |

| | |
|---|---|
| 6 | Contractor's Guaranty and Warranty |
| 7 | Contractor's Certificate and Release |
| 8 | Warranty Notice |
| 9 | MBE WBE Report |
| 10 | IRS Form W-9 Request for Taxpayer Identification Number and Certification |
| 11 | Construction Observation Report |
| 12 | Certification of Final Inspection |
| 13 | Change Order No. 1 |
| 14 | Contract for Rehabilitation |
| 15 | Non-Collusion Affidavit of Prime Bidder |
| 16 | Notice to Proceed with Contract |
| 17 | Acknowledgment of Receipt of General Conditions for Rehabilitation |
| 18 | Letter from McCorkle to George 6/17/99 |
| 19 | HEDFC Check No. 37435 for $277.94 to Ace Roofing |
| 20 | Letter from HEDFC to McCorkle 8/28/00 |
| 21 | Document Routing Sheet initialed on 10/28/99 and 11/12/99 |
| 32 | Letter from McCorkle to HEDFC 10/23/00 |
| 33 | Letter from Ace Roofing to McCorkle 7/20/99 |
| 34 | Contract Specifications -- Scope of Work |

In the spring 1999, claimant Charlene McCorkle obtained a loan from HEDFC for the purpose of making certain repairs to her home at 5614 Woodland, Kansas City, Missouri. The specifications for this work, in relevant part, called for a new roof on the house and porch, a new aluminum ornamental screen door, and replacement of the electrical service panel and wiring in the basement. (Exh. 34). Because Ms. McCorkle was unfamiliar with any contractors who could do the work, she relied on the recommendation of HEDFC and agreed to contract with Ace Roofing and its principle, Ronald E. George, to do the work. On April 12, 1999, Ms. McCorkle and Ace Roofing entered into a contract for rehabilitation in the amount of $9,789.00 for the work described in the specifications. (Exhs. 4 and 34). Thereafter, Ace Roofing began the work.

From the beginning, it appears that Ms. McCorkle had misgivings about Mr. George and Ace Roofing. At the hearing, Ms. McCorkle testified that she was concerned that the beginning of the work may have been delayed due to problems Mr. George encountered with his contractor's license or insurance requirement. She was concerned that he did not have sufficient manpower to do the work. She was concerned that he did not properly supervise his workers. She was also concerned that he did not complete the work in a workmanlike fashion.

Ultimately, Ms. McCorkle fired Mr. George and Ace Roofing from the job on June 17, 1999. (Exh. 19). In terminating the services of Mr. George and Ace Roofing, Ms. McCorkle complained in her letter that the work was not professionally done, was not performed in timely manner and was not in accordance with the contract. However, in the letter terminating the services of Mr. George and Ace Roofing, Ms. McCorkle did not specify how the work was not done in accordance with the contract.

After terminating the services of Mr. George and Ace Roofing, HEDFC arranged for another contractor, John Kane of A to Z Painting, to complete or repair the work of Mr. George and Ace Roofing. (Exh. 20). As a result, a Change Order was implemented for the contract between Ms. McCorkle and Mr. George/Ace Roofing which deducted $750.00 from the contract price. (Exh. 13).

On August 16, 1999, a final inspection of the property and the work done was conducted by HEDFC. (Exhs. 12 and 22). The inspection found that the work had been done satisfactorily and in accordance with the contract. On August 26, 1999, Ms. McCorkle signed a Progress and Final Payment Request which said "This is to certify that the work related to the amounts listed above is satisfactorily completed in conformance with the contract, and that the amounts listed above are correct." (Exh. 1). Also on August 26, 1999, Ms. McCorkle received a Contractor's Guarantee and Warranty which warranted the work of Mr. George and Ace Roofing for a period of 1 year from after the final inspection of August 16, 1999. (Exh. 6). As a result, Mr. George and Ace Roofing were ultimately paid $9,039.00. (Exh. 31). In the year following the inspection, Ms. McCorkle made no complaint to Mr. George or Ace Roofing about the work performed at her home. Additionally, she made no claim under the terms of the Contractor's Guarantee and Warranty. Before October 23, 2000, it is unclear what, if any, verbal complaints Ms. McCorkle made to HEDFC about the work performed at her home.

On October 23, 2000, Ms. McCorkle sent a letter to HEDFC lodging several complaints about the work on her home. First, Ms. McCorkle complained that her desire was to have all of the electrical wiring in the house replaced, not just the service panel and the wiring in the basement. Second, Ms. McCorkle complained that the storm door, which was installed

4

incorrectly but had been repaired, was not repaired to her satisfaction because it was not cosmetically pleasing and there was still some light showing around the door. Third, she complained that the guttering which was installed continued to overflow resulting in leak problems.

In addition to the complaints expressed by Ms. McCorkle in her October 23, 2000 letter, Ms. McCorkle offered some additional complaints at the hearing. At the hearing, Ms. McCorkle testified that the problem with the storm door, in addition to it not fitting well, was that she wanted an iron security door and instead got something of lesser quality. She also testified that the color of the roofing shingles was red and she wanted grey.

It is clear from the evidence that Ms. McCorkle was not satisfied with Mr. George or his work. However, it is not clear that her dissatisfaction was not properly addressed by HEDFC. After Ms. McCorkle terminated the services of Mr. George and Ace Roofing, HEDFC arranged for the work to be completed and the mistakes of Mr. George to be repaired. Subsequently, Ms. McCorkle signed a Progress and Final Payment Report indicating that the work had been satisfactorily completed. Thereafter, Ms. McCorkle made no claim under the Contractor's Guarantee and Warranty.

The undersigned finds that the complaints expressed by Ms. McCorkle in her October 23, 2000, letter to HEDFC and at the hearing are not sufficiently supported. Ms. McCorkle testified at the hearing that the roof shingles were not of a color acceptable to her. It appears that the hearing on her claim was the first time she made that complaint. Mr. George testified at the hearing that the color of the shingles was a matter of choice of the homeowner and that he abided

5

by that choice. The fact that Ms. McCorkle made no claim or complaint about this issue until the hearing detracts from its credibility.

Ms. McCorkle's complaint about the wiring in the house appears to stem from a discrepancy between what Ms. McCorkle wanted and what was called for in the specifications. The specifications required that the service panel be replaced and that the wiring in the basement be replaced. There was no contractual requirement that the wiring in the entire house be replaced. While it may be true that Ms. McCorkle wanted (and expected) the wiring in the entire house to be replaced, there was no contractual obligation to do so. Accordingly, Ms. McCorkle's claim on this issue fails.

The complaint of Ms. McCorkle about the storm door also seems to spring from a difference in her expectation and what the contract required. Ms. McCorkle's desire to have an iron security door is not consistent with the specifications for the contract which required an aluminum ornamental door. Mr. George testified that when he provided an aluminum ornamental door, Ms. McCorkle was not satisfied with it, so he replaced it at her request with a door that had somewhat better security features. While this solution may not have met the expectations of Ms. McCorkle, it was all that was required by the contract. Additionally, it appears that Ms. McCorkle, in hindsight, was not satisfied with the repair to the installation of the door that was made after Mr. George left the job. However, she did not indicate her dissatisfaction with the way the work was performed when she executed the Progress and Final Payment Request on August 26, 1999.

The complaint of Ms. McCorkle concerning the guttering and its tendency to overflow is a more difficult one to address on this record. On the basis of the evidence, it cannot be

6

determined whether any overflow that occurs in the guttering is a matter of a problem with installation or simple obstruction which needs to be cleared from the gutter.  As a result, the undersigned cannot conclude from the evidence that HEDFC has an obligation to repair or replace the guttering.  The burden to sustain this claim rests with Ms. McCorkle and she has not met it.  While the undersigned is not convinced that it can or should require HEDFC to take action with respect to this issue, should the Receiver decide to have the guttering at Ms. McCorkle's home inspected to see if there is any installment defect, it would be viewed as a matter of good faith.

For these reasons, it is

RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order DENYING the claim of Charlene McCorkle filed on October 19, 2005 (Doc. No. 158).

The parties are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same.  A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the District Judge except upon the ground of plain error or manifest injustice.

                                              */s/   JOHN T. MAUGHMER*
                                                   John T. Maughmer
                                           United States Magistrate Judge

Kansas City, Missouri