IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 05-0368-CV-W-GAF |
| | ) | |
| HOUSING & ECONOMIC DEVELOPMENT | ) | |
| FINANCIAL CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

This case came to the Court on the Application of Cedric Hernandez (Hernandez) for a Temporary Restraining Order, Declaratory Judgment and Equitable Redemption (Doc. No. 1978). Hernandez's Application sought to stop a pending foreclosure action brought by The Housing and Economic Development Financial Corporation (HEDFC) with respect to a residence located at 1626 East 75th Terrace, Kansas City, Missouri. After hearing from the parties, the Court determined that the root issue involved a dispute as to the amount owed to HEDFC pursuant to a Note secured by a Second Deed of Trust. In sum, while the parties disputed the correct amount owed, Hernandez represented that he was willing and able to pay whatever amount the Court determined was due and owing under the Note and Second Deed of Trust. Under these circumstances, the Court entered its Order granting a Preliminary Injunction to halt the pending foreclosure by HEDFC on the subject property (Doc. No. 1980). Subsequently, the Court referred the matter to the undersigned to hold an evidentiary hearing and provide a Report and Recommendation with respect to the proper amount due and owing under the terms of the Note and Second Deed of Trust.

On January 14, 2010, the undersigned held an evidentiary hearing on the issue. Claimant Hernandez was represented by his counsel, Joel Laner. The City of Kansas City, Missouri, did not appear through counsel. HEDFC appeared through its Receiver, David E. Bahner, and was represented by counsel Keith Volpi and Robert Fitzgerald. At the hearing, Joyce Hardy and David Bahner were called as witnesses. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|--------|-------------|
| 1. | Trustee's Deed |
| 2. | Email from Brad Farney |
| A. | 24 CFR 92.254 |
| B. | 3/4/96 Promissory Note by Michelle Young |
| C. | 3/14/96 Second Deed of Trust in favor of Rehabilitation Loan Corp. |
| D. | Affidavit of Home Buyer -- Michelle Young |
| E. | 4/8/96 Letter from Michelle Young to HEDFC |
| F. | 3/31/99 Letter from Michelle Young to HEDFC |
| G. | 4/02 Letter from Michelle Young to HEDFC |
| H. | 3/18/03 Letter from HEDFC to Michelle Young |
| I. | 3/15/04 Letter from HEDFC to Michelle Young |
| J. | 3/10/05 Letter from HEDFC to Michelle Young |
| K. | 3/15/07 Letter from HEDFC to Michelle Young |
| L. | 3/10/08 Letter from HEDFC to Michelle Young |
| M. | 3/23/09 Letter from HEDFC to Michelle Young |

N.	Attorney Fee Invoices through 9/09

O.	Interoffice Memorandum

**FACTUAL BACKGROUND**

The residence at 1626 E. 76th Terrace was originally purchased by Michele Young in 1996. In conjunction with its purchase, Ms. Young obtained a no-interest loan from HEDFC pursuant to the Home Investment Partnerships Program (the Home Program)[1]. The Home Program loan was evidenced by a Note (Exh. B) and Second Deed of Trust (Exh. C), each executed by Ms. Young in favor of HEDFC, encumbering 1626 E. 76th Terrace. In summary, the Home Program provides that if a borrower, like Ms. Young, satisfies certain conditions, the principal amount of the loan that she receives will be reduced on a pro rata basis over a period of years until it reaches zero. This allows a certain category of home-buyers to obtain loans to maintain and improve their homes without having to pay the loans back. One of the essential conditions for the borrower to qualify for a Home Program loan is that the property must be occupied by the borrower as their principle residence. If the property is sold/transferred to someone else or if the borrower no longer occupies the property as their principle residence, then the loan reduction benefits of the loan are lost and any remaining balance becomes due. Ms. Young satisfied this condition at the time she obtained her Home Program loan from HEDFC by providing an Affidavit of Home Buyer (Exh. D) representing that she would occupy the property as her principle residence.

---

[1] The no-interest loan to Ms. Young originated through the Rehabilitation Loan Corporation which was the predecessor to HEDFC.

Paragraph 25 of the Second Deed of Trust provides, in part:

> Land Use Restriction Agreement. Lender is assisting in the financing of the purchase of the Property with a loan ( the "Loan") from funds made available from the City of Kansas City, Missouri (the "City") under the Home Investment Partnerships program as described in Title II, the Cranston-Gonzales National Affordable Housing Act, Public Law No. 101-625, 104 Stat. 4079 (1990), and 24 CFR Part 92, and pursuant to the rules and regulations promulgated thereunder and the requirements of the City (the "Home Program") which Home Program is being administered for the City. The Loan is made without a charge for interest on the outstanding principal balance of said Loan and is subject to principal reductions as provided in the Note.
>
> In consideration of said Loan, the Borrower agrees and covenants with the Lender that throughout the term of this Second Deed of Trust, and in order to satisfy the requirements of the Home Program, the Borrower will not during the term hereof (i) sell or transfer all or any part of the Property or any interest in it (or sell or transfer beneficial interest in Borrower and Borrower is not a natural person) without Lender's prior written consent; (ii) use the Property as an investment property or (iii) use the Property as a recreational house or "second" home. Upon the occurrence of (i), (ii), or (iii) above, the Lender may, at its option, require immediate payment in full of all of the amount of principal then outstanding under the Note and there shall be no further reduction of principal after the date any of the events described above shall occur. However, the option to accelerate shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Note.

In order to determine whether a borrower with a Home Program loan is entitled to an annual reduction in principal, HEDFC must determine each year if the borrower continues to use the property as their principle residence. In order to satisfy this obligation, HEDFC annually sends to the borrower a verification form which the borrower is instructed to fill out and return. If the borrower verifies that they continue to use the property as their principle residence, then the reduction of loan principal is applied for that year. In circumstances when the borrower does not

return the verification, HEDFC will often then send an investigator to the property to determine if the borrower is still using the property as a principle residence.

In this case, verification forms were sent to Ms. Young and returned by her for the years 1998(Exh E), 1999 (Exh F), 2000 and 2002 (Exh G).[2] Verification letters were sent to Ms. Young but not returned by her for the years 2001, 2003 (Exh H), 2004 (Exh I), 2005 (Exh J), 2006, 2007 (Exh K), 2008 (Exh L) and 2009 (Exh M). For some of the years that Ms. Young failed to respond to the principle residence verifications, HEDFC sent an investigator to the property in an attempt to contact Ms. Young. None of those attempts was successful.

In 2005, Ms. Young refinanced the first mortgage on the property. Inexplicably, HEDFC, as the holder of the Second Deed of Trust, never received notice of the refinancing nor was the Home Program loan paid off as part of the refinancing. As a result, HEDFC assumed the position of first secured lender on the property. In 2006, Ms. Young did not maintain insurance on the property. Even more puzzling is that in 2007 a lender with a position presumably junior to that of HEDFC foreclosed on the property. Again HEDFC, as the first secured party, received no notice of this foreclosure nor was the Home Program loan paid off as part of the foreclosure.

In 2008, claimant Hernandez bought the property. Once again, HEDFC received no notice of the sale and the Home Program loan was not paid off as part of the sale. Additionally, even though the property was transferred from Ms. Young to another party and Hernandez obtained Title Insurance when he purchased the property, it was never disclosed to Hernandez that HEDFC had a secured first position interest in the property. Finally, in 2009, HEDFC

---

[2] In 1998 a "double" reduction of the loan was mistakenly given Ms. Young by HEDFC. In order to correct this mistake, Ms. Young was automatically given a reduction in 2000 without the need for her returning any verification form.

learned that the property had been foreclosed and transferred to another party. With this information, in September 2009, HEDFC accelerated the amount due under the Home Program loan pursuant to the Second Deed of Trust and instituted its own foreclosure proceedings on the property.[3]

In its foreclosure proceeding, HEDFC claimed a principal amount owed on the Home Program loan of $9,853.70. This amount represented a loan balance of $9,346.16 and various fees for hazard insurance, a title report and postage totaling $507.54. The loan balance of $9,346.16 was determined after giving Ms. Young's account reduction credit for those years which she verified that she occupied the property as her principle residence (1998 - 2000, 2002), but not giving a reduction for those years where that information was not verified by either Ms. Young returning the verification forms or the efforts of investigators who visited the property (2001, 2003 - 2009). HEDFC also seeks reasonable attorney's fees in connection with its foreclosure proceeding and this action, as allowed in the terms of the Second Deed of Trust. The claimed attorney's fees total is $16,759.50.

**FINDINGS AND CONCLUSIONS**

HEDFC argues that its calculation of the balance due under the Home Program loan obtained by Ms. Young is correct because a condition precedent of granting the annual loan reduction to Ms. Young was verification that she continued to occupy the property as her principle residence. HEDFC takes the position that before each annual loan reduction could be granted, it had an obligation to determine whether or not the condition precedent had been

---

[3] There appears to be no challenge by Hernandez that Ms. Young breached covenants under the terms of the Second Deed of Trust thereby warranting an acceleration of the amount due under the loan. Hernandez's challenge is to the amount due as a result of those breaches.

satisfied. It took affirmative steps to see if the principle residence condition precedent had been satisfied by sending the residence verification forms to Ms. Young each year and in some years sending an investigator to the property in an attempt to contact Ms. Young. For those years where HEDFC was able to ascertain that the principle residence condition precedent had been satisfied, HEDFC granted the annual loan reduction. In the years where satisfaction of the condition precedent could not be determined, the annual loan reduction was not granted. In none of the years in question did Ms. Young take any steps on her own to satisfy HEDFC that the principle residence condition precedent had been satisfied.

Hernandez, now standing in the shoes of Ms. Young as the owner of the encumbered property, takes issue with this calculation. He argues that because there is no affirmative evidence to show that Ms. Young did *not* occupy the property as her principle residence in the years in question, it is inappropriate for HEDFC to deny the annual loan reductions. Hernandez argues that it is not enough for HEDFC to rely on the absence of executed principle residence verifications forms from Ms. Young as a basis for denying the annual loan reductions.

Assuming[4] that HEDFC bears the burden of showing that the principle residence condition precedent has not been met in order to justify not granting the annual loan reduction to Ms. Young, the Court concludes that, on the basis of this record, the burden has been satisfied. HEDFC took affirmative steps on its own initiative to determine whether Ms. Young qualified for an the annual loan reduction by sending her the verification form every year for her to return.

---

[4] HEDFC argues that because Hernandez is seeking to halt the foreclosure proceeding, it is his burden to establish that Ms. Young did satisfy the principle residence condition precedent. Because the Court concludes that HEDFC has established on the basis of this record that the principle residence condition precedent was not satisfied by Ms. Young for the years in question, it is not necessary to resolve this issue.

One could certainly argue that HEDFC had no duty to even send the verification forms because the responsibility of satisfying the condition precedent rested with Ms. Young. Regardless, Ms. Young's return of the verification form would entitle her, as it did on several occasions, to an annual loan reduction. Conversely, failure to return the loan verification form, absent other affirmative evidence that Ms. Young continued to occupy the property as her principle residence, would not provide HEDFC any basis for granting the annual loan reduction. In this case, for those years where Ms. Young failed to return to verification form, there is was no affirmative evidence at the time from which it could be concluded that Ms. Young occupied the property as her principle residence. Additionally, Hernandez presented no evidence at the hearing to show that Ms. Young occupied the property as her principle residence for the years in question. Had such evidence been presented to HEDFC at the relevant time or even at the hearing in this case, it might have been sufficient to allow the conclusion that Ms. Young had satisfied the condition precedent that she occupy the property as her principle residence and therefore entitle her to the annual loan reductions. However, on this record no such evidence exists. As a result, the undersigned cannot conclude that Ms. Young satisfied the condition precedent and, therefore, the refusal of HEDFC to grant the annual reductions for years other than 1998, 1999, 2000 and 2002 was justified. Accordingly, there remains a principal loan balance on the Home Program loan of $9,853.70 which is due HEDFC and subject to foreclosure.

Hernandez also challenges the reasonableness of the attorney's fees sought in the foreclosure proceeding. Paragraph 18 of the Second Deed of Trust sets forth the remedies available to HEDFC in the event there is a breach of any covenant by the borrower, Ms. Young. (Exh. C). In the event that such a breach occurs, Paragraph 18 provides:

> . . . Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees.

While Hernandez generally challenges the reasonableness of the claimed attorney's fees and costs, he offers no specific challenge to any of the individual invoices. Rather, Hernandez argues that it was unnecessary for HEDFC to incur attorney's fees and expenses after Hernandez represented that he would be bound by the Court's determination of the amount due HEDFC. This argument does not nullify the need for HEDFC to reasonably prepare for and defend itself in the hearing held before the undersigned on January 14, 2010.

The undersigned has reviewed the claimed work and fees and costs associated with that work. (Exh. N). The claimed fees and costs appear to have been incurred in connection with HEDFC pursing the remedies afforded it under the Second Deed of Trust, including foreclosure proceedings and defense of Hernandez's efforts in this Court to curtail foreclosure. Recovery of these fees and costs is appropriate under the terms of the Second Deed of Trust. While the claimed fees and costs are significant in relation to the principal balance due under the Home Program loan, that is not the test for reasonableness. The undersigned concludes that the fees and costs are reasonable and are recoverable by HEDFC under the terms of the Second Deed of Trust.[5]

---

[5] On January 14, 2010, Hernandez made an offer to HEDFC to settle this dispute by paying $3,115.40 to HEDFC. Hernandez now argues that this, in effect, was an offer of judgment and should serve to cut off attorney's fees and costs incurred after January 14, 2010. Even if properly couched as an offer of judgment pursuant to F.R.Civ.P. Rule 68, it would not serve to cut off attorney's fees and costs if the Court adopts the Recommendation of the undersigned that a principal balance of $9,853.70 and attorney's fees and costs of $16,759.50 are due HEDFC. This is because the amount offered is less than the amount ultimately awarded to HEDFC.

Accordingly, it is

RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order in favor of HEDFC finding that $9,853.70 is the principal amount due and $16,759.50 are the reasonable attorney's fees and costs recoverable under the terms of the Second Deed of Trust

The parties are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the District Judge except upon the ground of plain error or manifest injustice.

    */s/ JOHN T. MAUGHMER*
John T. Maughmer
United States Magistrate Judge